UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| OMAR EL IZQUIERDO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:05CV192 CDP |
| | ) |
| LARRY CRAWFORD, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Plaintiff Omar El Izquierdo filed this suit while he was incarcerated in the Missouri Department of Corrections. At the time he filed suit, Izquierdo was at the Southeast Correctional Center; he was later transferred to Jefferson City Correctional Center. Izquierdo argues that defendants violated his rights under the First and Fourteenth Amendments of the United States Constitution, as well as under the Religious Land Use and Institutionalized Persons Act (RLUIPA), by not providing religious services and programs for Shiite Muslims separate from those offered for Muslims in general.

Defendants seek summary judgment, asserting that their provision of joint services for all Muslims complies with the constitution and RLUIPA. Izquierdo did not respond to the summary judgment motion or to the court's show cause order. In ruling on this motion I am accepting the facts testified to by plaintiff in

his deposition, and am accepting the facts alleged in his complaint and grievances except where they are directly conflicted by his own sworn deposition testimony. I am also accepting the facts provided by defendants. There is no genuine dispute of any material fact, and defendants are entitled to summary judgment.

## Standards Governing Summary Judgment

In considering a motion for summary judgment, the court must view the facts and inferences from the facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp. Ltd., 475 U.S. 574, 587 (1986). As the moving party, defendants must establish that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## Undisputed Facts

When this suit was filed, plaintiff Omar El Izquierdo, previously known as Omar Hutchinson, was an inmate at Southeast Correctional Center (SECC). By the time he gave his deposition he had been transferred to Jefferson City Correctional Center (JCCC).[1] Defendants are Larry Crawford and Michael

---

[1] Izquierdo had been scheduled for release in January of 2007. He has not filed a change of address, and his mail has not come back as undeliverable, so I assume he is still incarcerated.

Coleman, the Director of Missouri Department of Corrections and the former Chaplain at SECC, respectively.

The crux of Izquierdo's claim is that the Shiite Islam religion is not being accommodated at SECC in violation of his constitutional and statutory rights. The Missouri Department of Corrections (MDOC) grants full accommodation to ten general religions: Christian-general, Christian-Roman Catholic, Jewish, Buddhist, Muslim/Al-Islam, Nation of Islam, Moorish Science Temple of America, Native American Spirituality, Sabbath Keepers and Wicca. MDOC does not recognize Protestant sects such as Methodist, Baptist and Lutheran – all Protestants (including Jehovah's Witnesses and Mormons) are accommodated together under Christians. Similarly, MDOC does not provide separate accommodation to the Shiite and Sunni sects of Islam.

The Muslim services provided at SECC are broad based and not sect specific. Izquierdo, along with all other Muslims, is allowed to participate in the weekly Friday Jumah prayer, the Taleem, Ramadan observance, the religious celebrations of Eid ul Fitr and Eid ul Adha, and is allowed to share in quarterly canteen requests. He was also allowed various religious items, such as a copy of the Koran, a prayer rug, a koufi, prayer beads, oils and religious books. In addition to the group services, all inmates are allowed to pray and study in their

-3-

cells and receive religious publications. While an inmate with individualized or sect-specific beliefs is not given individualized services, he is given accommodation that enables him to express those beliefs in private or with a visiting clergy or spiritual advisor. These approved religious leaders are called volunteers-in-corrections (VIC's). Both Izquierdo and defendants admit that it is difficult to obtain VIC's for the Shiite Muslim group.

At first, Izquierdo attended the joint Muslim services on Fridays at SECC. Almost immediately, however, conflicts between the Sunni and Shiite inmates began. Izquierdo and other Shiite inmates decided to stop attending the services because the services were led by Sunni inmate coordinators who the Shiite inmates believed disparaged the Shiite religion.

In February 2005, Izquierdo completed a Request for Accommodation of Religious Practices. In this request, Izquierdo asked for accommodation of Imamiyya Shi'a Al Islam, otherwise known as Shiite Islam. Izquierdo listed five fundamental beliefs of Shiite Muslims: (1) Five daily prayers; (2) fasting during the month of Ramadan; (3) Friday Jumah service; (4) fasting during the first ten days of the month of Hajj; and (5) Qur'an class. He also listed prayer rugs, Qur'ans, and Al Kafi Hadith as required articles. In addition, he listed Eid ul Fitr and Eid ul Adha as mandatory holy days. In his request, Izquierdo claimed that

-4-

the leader of the Friday prayer must be a Shiite for the group to stand behind and perform the prayer in unison. Izquierdo cited anti-Shiite rhetoric, slander of the Holy Imams of the House of Prophet Muhammad, and general discrimination by the Sunni leadership as reasons for the need for separate worship. Izquierdo attached a detailed, four-part protocol detailing how SECC could implement the requests of the Shiite inmates.

In support of his request, Izquierdo attached a document entitled "Early Imamiyya Shi'ite Thinkers" written by Syed Waheed Akhtar. In that piece, the author says that the main difference between the Sunnis and the Shiite lies in their approaches to and conceptions of leadership. From that piece and other supporting documents, Izquierdo has established that there exists a difference in beliefs between the Shiite and Sunni Muslims on the issue of leadership. He has also indicated that there are some differences in practice as well, although neither in his grievances nor in his deposition did he specifically explain the differences.

Around March of 2005, a representative of the Shiite Muslims made a formal request to Lawrence Morganfield III, the Superintendent of Religious/Spiritual Programming, for separate services. Morganfield denied the request, but stated that the request could be facilitated should the Shiite Muslim inmates find "Shiite volunteers who would be able to come into the institution to

perform/supervise religious services on Fridays, in conjunction with the already established Muslim service."

In June 2005, following the denial of his request for religious accommodation, Izquierdo filed an Informal Resolution Request (IRR), again providing his proposed protocol. After that IRR was denied, he filed an Offender Grievance and Offender Grievance Appeal. In a letter dated August 8, 2005, Michael Coleman responded to Izquierdo's grievance by saying that "in the future we are considering offering a separate call-out for Shiite Muslims, however, at this time we cannot duplicate services and do not have appropriate VIC's for coverage."

Defendants' uncontradicted evidence shows that the restraints on MDOC's ability to fully accommodate all inmates' individualized beliefs are based on: (1) budget restrictions; (2) substantial administrative burdens; (3) security concerns; (4) local volunteer faith community support; and (5) offender need/interest. Izquierdo admits that the interest in Shiite Islam among the offender population is small. Izquierdo admits that it would be impossible to run his proposed protocol without VIC's, and he envisions funding his protocol through contributions and grants from the Missouri government.

# Discussion

## 1. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust administrative remedies before filing suit: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress's goal in enacting this statute was "to reduce the quantity and improve the quality of prisoner suits" by affording prison officials time to resolve the complaints internally before going to federal court. Porter v. Nussle, 534 U.S. 516, 524-25 (2002). The PLRA requires that an inmate exhaust administrative remedies before filing a suit in federal court, and mandates dismissal if exhaustion was not completed at the time of filing. Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003). The Eighth Circuit previously required that a prisoner must individually name each defendant at each stage of the administrative process, but that requirement has been changed by Jones v. Bock, 127 S.Ct. 910 (2007). I conclude that Izquierdo has properly exhausted his administrative remedies.

## 2. Izquierdo's RLUIPA claim

Izquierdo has raised a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, et seq. RLUIPA establishes a statutory free exercise claim "encompassing a higher standard of review than that which applies to constitutional free exercise claims." Murphy v. Missouri Department of Corrections, 372 F.3d 979, 986 (8th Cir. 2004). The statute provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person - (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. 2000cc-1(a). Under RLUIPA, the prisoner must show, as a threshold matter, that there has been a substantial burden on his ability to exercise religion. Once this initial showing has been made, the burden shifts to the prison officials to show that the restriction was the least restrictive means to further a compelling governmental interest.

RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. 2000cc-5(7). Whether or not the separate service and protocol Izquierdo

requested are required by religious beliefs is a factual determination, which should not be quickly dismissed on summary judgment. Murphy, 372 F.3d at 988. For purposes of summary judgment, it is appropriate to assume that Izquierdo's beliefs are an "exercise of religion" under the statute. Even with that assumption, Izquierdo must still show that defendants have substantially burdened his religious exercise.

There is some disagreement among the circuits as to how to interpret the "substantial burden" language in RLUIPA. This language was originally in the Religious Freedom Restoration Act of 1993 (RFRA), the predecessor to RLUIPA, which was found unconstitutional by the Supreme Court in City of Boerne v. Flores, 521 U.S. 507 (1997) (holding that, as applied to states and localities, Congress had exceeded its power under section five of the Fourteenth Amendment in enacting RFRA). In RLUIPA, enacted in 2000, Congress "resurrected RFRA's language, but narrowed [its] scope," limiting its application to institutionalized persons and land use. Murphy, 372 F.3d at 987.

The Eighth Circuit looks to the cases interpreting RFRA for guidance in prisoner claims under RLUIPA. Murphy, 372 F.3d at 988. See also Weir v. Nix, 114 F.3d 817 (8th Cir. 1997); Ochs v. Thalacker, 90 F.3d 293 (8th Cir. 1996); Hamilton v. Schriro, 74 F.3d 1545 (8th Cir. 1996). Looking to prior

interpretations of RFRA, the Eighth Circuit has held that to constitute a substantial burden under RLUIPA the government policy or actions must –

> significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

Murphy, 372 F.3d at 988 (citing Weir, 114 F.3d at 820 (interpreting the language of RFRA.)). The Eighth Circuit has further chosen to carry over the deference previously given to prison authorities under RFRA claims, holding that Congress, in enacting RLUIPA, "did not intend to overly burden prison operations, but rather intended to provide as much protection as possible to prisoners' religious rights without undermining the security, discipline, and order of those institutions." Murphy, 372 F.3d at 987.

Izquierdo claims that denial of separate group services for Shiite and Sunni Muslims constitutes a "substantial burden" on his religious exercise. While a prisoner is not entitled to insist on a religious advisor whose beliefs are completely congruent with his own, Blair-Bey v. Nix, 963 F.2d 162, 163-64 (8th Cir. 1992), this circuit has found that a substantial burden to free exercise rights may exist "when a prisoner's sole opportunity for group worship arises under the guidance of someone whose beliefs are significantly different from his own." Weir, 114

F.3d at 821 (citing SapaNajin v. Gunter, 857 F.2d 463, 464 (8th Cir. 1988)).

In Weir the Court found no substantial burden on religious exercise where different groups of Christians were required to worship together. 114 F.3d at 821. Plaintiff was a member of a sect that believed in the doctrine of separatism, which requires adherents to separate themselves from spiritual leaders whose teachings offend fundamentalist teachings. Id. at 819. The Protestant chaplain provided did not share the plaintiff's belief in separatism, but the court concluded the difference was not significant enough that joint worship substantially burdened the plaintiff's rights. By contrast, in SapaNajin v. Gunter there was a significant difference between the beliefs of the Heyoka Indians and the Sioux Indians, because the worship service of one sect was essentially the reverse of the other's. 857 F.2d at 464.

In Murphy v. Missouri Department of Corrections, the court found that a prison's denial of separate group worship could constitute a substantial burden on the exercise of religion, where the prisoner was a practicing member of the Christian Separatist Church Society, a religion that believes in the superiority of the Caucasian race and the necessity of separating the Caucasian race from all other races. 372 F.3d at 981. In Murphy plaintiff presented evidence tending to show that the presence of non-Caucasian prisoners during worship directly

contradicted a central tenet of the religion.

Although Izquierdo has asserted that certain beliefs and aspects of his religion are incompatible with Sunni Muslim beliefs, he has not presented any evidence to show that joint worship contradicts any central tenets of his faith. In fact, the evidence he does supply tends to show that the differences between the Shiite and Sunni faiths in doctrine and in practice – at least as practiced in the Missouri prisons – are not fundamental. See Orafan v. Goord, 411 F. Supp. 2d 153, 156 (N.D.N.Y. 2006) (finding that Shiite prisoners failed to show that a unified Shiite/Sunni service was a substantial burden on the exercise of their religion). Izquierdo has not pointed to any aspect of the services themselves that are inconsistent. The court cannot assume that because Sunnis and Shiites in other parts of the world have long-standing sectarian conflicts the same must also be true among Muslims in the Missouri Department of Corrections, most of whom, according to Izquierdo, are former gang members who converted to Islam after entering prison.

Izquierdo claims that defendants' refusal to implement his protocol for religious services constitutes a substantial burden on his religious exercise. Izquierdo is being allowed some of the services he is requesting, such as the observance of Ramadan and the two Muslim holidays of Eid ul Fitr and Eid ul

Adha, and he has failed to establish that the other services are central to his religion. Izquierdo has simply failed to present any evidence that would lead a fact-finder to conclude that there has been a substantial burden on his religious exercise. Izquierdo's ability to engage in activities central to his religion has not been substantially burdened by the defendants' actions. There is no evidence that gives rise to a genuine dispute of material fact with regard to this part of the claim, and defendants are entitled to summary judgment.

As an alternative basis for summary judgment, defendants have presented undisputed evidence showing that their decision to deny separate group worship and religious services to Shiite Muslims was the least restrictive means to further a compelling government interest. While this test imposes a high burden on prison officials, this court must accord "a significant degree of deference to the expertise of prison officials in evaluating whether they met that burden." Hamilton, 74 F.3d at 1554. See also Weir, 114 F.3d at 820; Ochs, 90 F.3d at 296; Murphy, 372 F.3d at 988.

Defendants have shown that there would be an enormous administrative burden if MDOC were required to accommodate the individualized religious beliefs or religious sects of all inmates. This type of concern has been found sufficient in other cases. See Thunderhorse v. Pierce, 418 F. Supp. 2d 875

(E.D.T.X. 2006) (holding that a prison "cannot be expected to provide separate religious services for seven different branches of a religious faith . . . nor does the law require that such be provided); Muhammad v. City of New York Department of Corrections, 904 F. Supp. 161, 195 (S.D.N.Y. 1995) (RFRA not violated by prison's decision not to provide separate group worship for Nation of Islam inmates).

The defendants have also shown that the prison security could be harmed if they showed favoritism to one religious group, such as by providing sect-specific services for Muslims when they do not do so for Christians. Cf. Adkins v. Kaspar, 393 F.3d 559, 565 (5th Cir. 2004) (finding that if a member of one small religious sect were accommodated and other small religious groups were not, the accommodated group "could appear to be favored over the others, a perception that could have a negative effect on prison morale and discipline"). Institutional security is "the most compelling government interest in a prison setting." Goff v. Graves, 362 F.3d 543, 549 (8th Cir. 2004). See also Pell v. Procunier, 417 U.S. 817, 823 (1974) (holding that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves").

Defendants have thus shown that they are entitled to summary judgment on plaintiff's RLUIPA claim for two different reasons: the undisputed facts show no substantial burden on Izquierdo's exercise of religion, and defendants' actions are the least restrictive means to further a compelling government interest.

### 3. Izquierdo's Constitutional Claims

In addition to his statutory claim, Izquierdo brings an action under 42 U.S.C. § 1983, claiming that defendants violated his rights under the First and Fourteenth Amendments. In large part, the analysis under RLUIPA also applies to the Constitutional claims.

**a. Free Exercise**

Prison inmates retain protections afforded by the First Amendment "including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Shabazz, 482 U.S. 342, 348 (1987) (citing Pell v. Procunier, 417 U.S. at 822; Cruz v. Beto, 405 U.S. 319 (1972)). These rights are limited, however, by considerations unique to the demands of the penal system. O'Lone, 482 U.S. at 348 (citing Price v. Johnston, 334 U.S. 266, 285 (1948)). In balancing the constitutional rights of the prisoner with the valid objectives of the penal system, the courts typically defer to prison authorities "who are actually charged with and trained in the running of the particular institution under examination." O'Lone,

482 U.S. at 348 (citing Bell v. Wolfish, 441 U.S. at 562).

With this deference in mind, the courts have developed a reasonableness test less restrictive than that usually applied to alleged infringements of constitutional rights. O'Lone, 482 U.S. at 349. In order to make a valid First Amendment claim against defendants, Izquierdo must establish that (1) his religious beliefs are sincerely held and (2) his free exercise of those beliefs have been actually infringed upon by the defendants. Goff, 362 F.3d at 547. If Izquierdo is able to meet this burden, defendants may still prevail if they can establish that the prison regulations are "reasonably related to legitimate penological interests." Id. at 549. Even if I assume that Izquierdo has met the first of his burdens, defendants are nevertheless entitled to summary judgment.

Izquierdo must show that his sincere religious beliefs have actually been infringed. As the analysis of this element is essentially the same as the analysis under RLUIPA, I must also conclude that the denial of separate services and protocol implementation do not infringe on Izquierdo's First Amendment right to free exercise of his religion.

Additionally, the undisputed evidence shows that defendants' denial of separate services and the requested protocol is reasonably related to legitimate penological interests. In evaluating the reasonableness of these interests, the court

considers four related factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate, neutral governmental interest used to justify it; (2) whether there exist alternative means for prisoners to exercise the constitutional right at issue; (3) the impact that would be caused by accommodation of the right on prison staff, other inmates, and allocation of prison resources; and (4) whether any alternative exists that would fully accommodate the prisoner's rights at de minimis cost to valid penological interests. Turner v. Safely, 482 U.S. 78, 89-91 (1987); Hamilton, 74 F.3d at 1551.

Defendants have sufficiently shown that their actions satisfied each Turner factor. The denial is substantially related to the prison's compelling interests in security, budget restrictions, and staffing limitations. There are sufficient alternative means for Izquierdo to practice his faith without separate group worship and without implementing his protocol. The impact caused by granting Shiite Muslims separate services from Sunni Muslims has already been discussed in the context of the RLUIPA claim, and the same reasons govern the analysis under Turner. The final Turner factor looks to whether an alternative exists that would accommodate Izquierdo's requests at de minimis cost. Defendants have established that the changes would, in fact, be cost prohibitive. Izquierdo has admitted that implementation of his protocol would require grants from the

government of Missouri. He has further admitted that it is difficult to find Muslim volunteers, and that his protocol would be impossible to implement without them.

### b. Establishment Clause

Izquierdo raises an Establishment Clause claim, arguing that SECC favored the Sunni Muslim religion by giving preference to the Sunni Muslim teachings. The Establishment Clause of the First Amendment prohibits any "law respecting an establishment of religion." U.S. Const. Amend. I. Defendants are also entitled to summary judgment on this claim because the uncontradicted evidence shows that the defendants' actions had a secular purpose and did not advance or inhibit religion. See Lemon v. Kurtzman, 403 U.S. 602, 612 (1971).

### c. Equal Protection

Izquierdo also alleges a violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause requires that the government "treat similarly situated people alike." Murphy, 372 F.3d at 984 (citing Rouse v. Benson, 193 F.3d 936, 942 (8th Cir. 1999)(internal citations omitted)). To succeed on an Equal Protection claim, Izquierdo must show that he has (1) been treated differently; than (2) a similarly situated class of inmates; (3) that the different treatment burdens one of his fundamental rights; and (4) that the different treatment is not rationally related to any legitimate penological interest.

Murphy, 372 F.3d at 984 (citing Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998)).

Izquierdo appears to be claiming that the Shiite Muslims have been treated differently from three different similarly situated groups – (1) other Muslims, such as the Sunni and the Nation of Islam; (2) the Protestants and Catholics; and (3) all religious groups who are provided a sect-specific chaplain and not required to get an outside volunteer. Even if Izquierdo could show that these groups are both similar and were treated dissimilarly, defendants would still be entitled to summary judgment because the undisputed evidence shows that the denial of separate services for Sunni and Shiite Muslims is rationally related to legitimate penological interests. The Turner factors of interests in security, budget restrictions, and staffing limitations, as discussed in the context of Izquierdo's Free Exercise claim, are equally valid and applicable to his Equal Protection claim. See Orafan v. Goord, 411 F.Supp. 2d at 167. Accordingly, Izquierdo's Equal Protection claim must fail, and summary judgment is granted to defendants on this claim as well.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#37] is granted.

A separate judgment in accordance with this Memorandum and Order is entered the same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 26th day of September, 2007.